J-S68027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                               :           PENNSYLVANIA
                               :
             v.                   :
                               :
                               :
JAMES COLE                     :
                               :
           Appellant          :    No. 775 WDA 2019

Appeal from the PCRA Order Entered April 25, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013244-2013

BEFORE:    GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED DECEMBER 20, 2019**

James Cole appeals from the trial court's order, entered in the Court of
Common Pleas of Allegheny County, denying his petition filed pursuant to the
Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful
review, we affirm.

In a prior appeal, our Court summarized the underlying facts of the case
as gleaned from the trial court:

> On September 12, 2013, McKeesport Police Officer Steve
> Kondrosky was on patrol when he observed a blue Hyundai
> travelling eastbound on East Fifth Avenue. The vehicle was
> travelling in a prohibited driving lane and made an illegal left turn
> across three lanes of traffic onto the Duquesne McKeesport Bridge
> without using a signal. Officer Kondrosky pursued the vehicle,
> which finally pulled over after approximately one[-]half of a mile,
> on Route 837 and Cochran Street in Duquesne.

---

[*] Retired Senior Judge assigned to the Superior Court.

Officer Kondrosky approached the car's driver, subsequently identified as Cole, and requested his license, insurance and registration information. Cole provided the officer with his license, but indicated that he was not the car's owner and could not find the insurance or registration. Officer Kondrosky advised Cole that the documents could usually be found either in the center console or the glove compartment. However, Cole responded that he did not want to go in the glove box. Officer Kondrosky testified that Cole appeared nervous. Officer Kondrosky told Cole not to make any sudden movements while he waited for the dispatch center to respond with information regarding Cole's license.

While Officer Kondrosky waited to hear from dispatch, he observed Cole lean over to the passenger-side of the vehicle, nearly disappearing from his line of sight. Officer Kondrosky told Cole to sit up and stop reaching around and Cole complied. Due to Cole's movement and behavior, Officer Kondrosky called for backup. Lieutenant Connor Craig, a K-9 officer, Sergeant Mark Steele and Detective Vandelli Summers responded to the scene. As they arrived, Officer Kondrosky again approached Cole's vehicle, at which point Cole again began to reach toward the passenger-side floor. Officer Kondrosky yelled to Cole to sit up and stop reaching and proceeded to unholster his weapon, as he was not sure whether Cole was reaching for a gun. At that point the three backup officers had arrived, and they all approached the vehicle together.

Officer Kondrosky asked Cole why he had disobeyed his order not to reach around in the vehicle, at which time he detected an odor of marijuana and informed Cole of what he smelled. Officer Kondrosky then observed that Cole was sweating profusely and was unable to complete a sentence because he was so shaken up. As a result of Cole's actions, movements and demeanor, Officer Kondrosky asked Cole to exit the vehicle. Cole replied, "for what?" and placed his foot on the brake as he reached for the center gearshift. Officer Kondrosky then pointed his weapon at Cole and informed him that he was not free to leave. After a few more demands by Officer Kondrosky, Cole exited the vehicle. Cole was placed at the rear of the vehicle. Officer Kondrosky informed Lieutenant Craig of Cole's nervousness and movement while in the vehicle. As a result, Lieutenant Craig went to the passenger[-]side of the vehicle and, through the window, observed what appeared to be the butt end of a firearm protruding from the passenger seat floorboard. He stated "gun" to the other officers,

at which time Cole fled across Route 837 as Sergeant Steele grasped the back of his shirt. Lieutenant Craig deployed his [T]aser on Cole's back, after which Cole was taken into custody. Lieutenant Craig recovered the firearm and another officer located a baggie containing a small amount of marijuana in the vehicle.

*Commonwealth v. Cole*, 1526 WDA 2015 at 1-4 (Pa. Super. filed Nov. 16, 2016) (unpublished memorandum).

Cole filed a pretrial motion to suppress[1] claiming, in part, that the stop of his vehicle and initial detention were unlawful where "McKeesport Police exceeded or acted beyond their jurisdictional power and violated the Pennsylvania Statewide Municipal Police Jurisdiction Act (MPJA)." Omnibus Pre[]trial Motion, 1/13/14, at ¶ 4. After a suppression hearing, the trial court denied the motion and a non-jury trial ensued, after which the trial court found Cole guilty of various firearm, drug and traffic offenses.[2] On September 2, 2015, Cole was sentenced to a term of three to six years' imprisonment on the possession of firearm (prohibited) charge and four years of probation on the persons not to possess a firearm charge; no further penalty was imposed on the remaining counts. Cole filed a timely notice of appeal. Our Court affirmed his judgment of sentence. *See Cole*, *supra*. Cole's petition for

_____

[1] Cole also filed a motion to sever as to his possession of firearm (prohibited) charge, which was denied.

[2] Cole was convicted of the following: possession of firearm (prohibited), 18 Pa.C.S. § 6105(a)(1); firearms not to be carried without a license, 18 Pa.C.S. § 6106(a)(1); resisting arrest, 18 Pa.C.S. § 5104; possession of marijuana, 35 P.S. § 780-113(a)(31); carrying a loaded weapon, 18 Pa.C.S. § 6106.1(a); and improper signal, 75 Pa.C.S. § 3334(b). The Commonwealth dismissed the charge of use/possession of drug paraphernalia and Cole was found not guilty with regard to the charge of obedience of traffic-control devices.

allowance of appeal to the Pennsylvania Supreme Court was denied on May 24, 2017.

On June 15, 2017, Cole filed a *pro se* PCRA petition alleging, in part, that counsel was ineffective for failing to raise on direct appeal the issue regarding whether Officer Kondrosky had jurisdiction to pursue him under the MPJA.  The trial court appointed PCRA counsel, Brian McDermott, Esquire, who filed an amended PCRA petition including the claim that "counsel was ineffective for failing to argue [in prior counsel's direct appeal to the Superior Court of Pennsylvania] that Officer Kondrosky's pursuit of [Cole] was not 'Hot and Fresh[.]'" Amended PCRA Petition, 2/13/18, at ¶ 37.  Following a hearing, the PCRA court denied Cole's amended petition on April 25, 2019.[3]  This timely appeal follows.

On appeal, Cole presents the following issue for our consideration:  "Did the trial court err when it denied [Cole's] [a]mended PCRA [petition] to overturn his conviction and suppress all evidence as fruit of the poisonous tree [as a result of counsel's ineffectiveness]?"  Appellant's Brief, at 4.

_____

[3] The standard of review of an order denying a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.  **Commonwealth v. Johnston**, 42 A.3d 1120, 1126 (Pa. Super. 2012).

Cole argues that since Officer Kondrosky failed to immediately activate his overhead lights and sirens when he stopped him, the officer's pursuit was not "hot and fresh" for purposes of the MPJA.[4]  We disagree.

_____

[4] In his amended petition, Cole supports his ineffectiveness claim by pointing out the following:

- Officer Kondrosky testified that he could not immediately turn and follow the vehicle after he observed the traffic violation due to traffic.  **He waited approximately five to ten seconds before he was able to follow the vehicle**;

- Once he got to the top of the ramp he testified the vehicle was approximately 300 yards in front of him.  **The Officer was able to catch up to the vehicle near the halfway point of the bridge at which point he activated his overhead lights and sirens**; [t]he Officer testified **Petitioner** *may have been* **out of the officer's jurisdiction prior to activation of lights and sirens**;

- Petitioner therefore argues that **the chase was not immediate** as required under the MPJA **since the officer waited five to ten seconds before beginning to pursue him**;

- Petitioner argues that since police officers on patrol have the right to stop all traffic to pursue a suspect and that he could have done so;

- Petitioner submits that **since the officer failed to immediately activate his overhead lights and sirens that the pursuit was not hot and fresh** for purposes of the MPJA;

- Additionally, **it was not immediate because the overhead lights and sirens were not activated until half[]way across the bridge, which was [in] another jurisdiction**[.]

The MPJA confers jurisdiction on officers making arrests outside of their primary jurisdiction. ***See generally*** 42 Pa.C.S. § 8951-8955. That statute specifies six exceptions permitting officers to act outside their primary jurisdiction. One of those exceptions, set forth at section 8953(a)(2) of the MPJA, permits an officer to enforce the laws of this Commonwealth beyond the territorial limits of his primary jurisdiction "[w]here [he] is in **hot pursuit** of any person for any offense which was committed, or which he has probable cause to believe was committed, within his primary jurisdiction and for which offense the officer continues **in fresh pursuit** of the person after the commission of the offense." 42 Pa.C.S. § 8953(a)(2) (emphasis added). The "hot and fresh pursuit" requirement under the MPJA necessitates a finding that the officer met the immediate, continuous, and uninterrupted standard previously applicable to the Intrastate Hot Pursuit Act (IHPA),[5] as well as the additional requirement of some sort of chase. ***Commonwealth v. McPeak***, 708 A.2d 1263, 1266 (Pa. Super. 1998).

Cole claims that counsel had no strategic reason for failing to argue, at his request, the "hot and fresh pursuit" issue on direct appeal, and that he was prejudiced because our Court would have reversed the suppression order and his conviction.

---

Amended Post Conviction Relief Act Petition, 2/13/18, at 9-10 (emphasis added).

[5] The IHPA, which was repealed and replaced by the MPJA, required police to "continue in pursuit." ***McPeak***, ***supra*** at 1265.

With respect to claims of ineffective assistance of counsel, we begin with the presumption that counsel is effective. **Commonwealth v. Spotz**, 47 A.3d 63, 76 (Pa. 2012). To prevail on an ineffectiveness claim, a petitioner must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. **Id.** (citation omitted).

Our Supreme Court has noted that the MPJA must be construed liberally to achieve its purposes, one of which is to provide police with the authority to act outside their jurisdictions under the circumstances enumerated in that Act. **Commonwealth v. Chernosky**, 874 A.2d 123, 129 (Pa. Super. 2005), citing **Commonwealth v. Lehman**, 870 A.2d 818, 820 (Pa. 2005). In **Commonwealth v. Hilliar**, 943 A.2d 984 (Pa. Super. 2008), our Court reiterated that:

> One of the principal purposes of the MPJA is to promote public safety while placing a general limitation on extraterritorial police patrols. It is in the interest of promoting public safety, therefore, that the MPJA exceptions contemplate and condone extra-territorial activity in response to specifically identified criminal behavior that occur[s] within the primary jurisdiction of the police.

**Id.** at 991 (citation omitted); **see also Lehman**, 870 A.2d at 820 (Act was not intended to "erect impenetrable jurisdictional walls benefiting only criminals hidden in their shadows.").

At the time Officer Kondrosky stopped Cole on Route 837 and Cochran Street in Duquesne, he had been following Cole for more than one-half mile

after witnessing him commit traffic violations in McKeesport, specifically making an illegal left turn without using a signal. Witnessing the traffic violations gave Officer Kondrosky probable cause to stop Cole. *See Commonwealth v. Brown*, 64 A.3d 1101, 1106 (Pa. Super. 2013) (where officer testified defendant turned vehicle from one street to another without using signal lamps, officer "unquestionably possessed facts to warrant belief by any reasonable person that [defendant] violated the [V]ehicle [C]ode"). The stop occurred after the cars crossed the Duquesne-McKeesport Bridge (Bridge) as the officer had "probably" just crossed over from his jurisdiction (McKeesport) into Duquesne.[6] N.T. Suppression Hearing, 2/4/14, at 67 (defense attorney indicating that stop "probably" occurred outside jurisdiction); N.T. PCRA Hearing, 4/23/19, at 8 (trial counsel stating that defendant was "probably arrested right outside McKeesport"). Finally, Officer Kondrosky testified that Cole took almost one-half a mile to stop his vehicle after the officer activated his overhead lights and audible siren. *Id.* at 6.

Based upon these facts, we conclude that Officer Kondrosky's pursuit of Cole was an "immediate, continuous, and uninterrupted" chase. *McPeak*, *supra*. The fact that the officer took a mere five to ten seconds to turn his vehicle around to follow Cole for more than half a mile and that he did not

---

[6] The Bridge connects Route 837 in Duquesne and Route 148 in McKeesport. *See* https://en.wikipedia.org/wiki/McKeesport-Duquesne_Bridge (last visited 12/4/19).

activate his siren and lights[7] until he had "probably" just crossed the jurisdictional line does not vitiate the officer's "hot and fresh" pursuit of Cole under section 8953(a)(2). To find merit in Cole's argument would require a hyper-technical reading of the MPJA and contravene our Court's liberal construction of the statute to effectuate its purpose. *Hilliar*, *supra*. *See also* N.T. Suppression Hearing, 2/4/14, at 69 (trial court acknowledges "the more prudent thing was [to] let [the officer] get over the bridge to pull him over so there is a place to pull him over").[8]

Because Cole's underlying claim has no arguable merit, counsel cannot be deemed ineffective. *Spotz*, *supra*. Accordingly, the trial court properly denied Cole's petition. *Johnston*, *supra*.

Order affirmed.

_____

[7] In fact, at the PCRA hearing, Officer Kondrosky testified that he may have also turned on his overhead lights *prior* to crossing the bridge in order to get in front of oncoming traffic to pursue Cole. N.T. PCRA Hearing, 4/23/19, at 15-16. If in fact this is true, then the officer's lights were turned on within his jurisdiction (McKeesport).

[8] We note that even if Officer Kondrosky technically was not in hot and fresh pursuit of Cole, as it is defined under section 8953(a)(2), suppression would not have been the proper remedy. *See Hilliar*, *supra* (minor infraction of MPJA does not warrant suppression of inculpatory evidence; exclusionary rule does not apply in such cases).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/20/2019